## John S. Mathews, Conservator, Appellant, v. Mary Jane Sargent, Appellee.

### Gen. No. 5,689.

1. LUNATICS—*duties of conservator under act relating to.* R. S. c. 86, does not authorize a conservator to appear against his ward and use his ward's estate to prevent the restoration of her rights.

2. LUNATICS—*duties of conservator on notice of desire of ward to be restored to rights.* A conservator of one adjudged feeble-minded, on notice that she desires to be restored should interview her and, if satisfied that she has recovered, place no obstacles in her way; but if doubtful of her recovery he should consult the county judge and govern himself by his directions, in which case he will be entitled to reimbursement for reasonable expenses so incurred.

3. LUNATICS—*when conservator cannot recover against ward's estate for expenses of contesting restoration.* The conservator of one adjudged feeble-minded cannot recover from his ward's estate for expenses and attorneys' fees incurred in an unsuccessful attempt to prevent her restoration, where such expenses were not incurred under the county court's authority but in violation of R. S. c. 86, and where to his knowledge the ward's relatives had employed competent attorneys to prevent the restoration.

Appeal from the Circuit Court of Knox county; the Hon. ROBERT J. GRIER, Judge, presiding. Heard in this court at the April term, 1912. Affirmed. Opinion filed October 15, 1912.

FLETCHER CARNEY and JAMES W. CARNEY, for appellant.

WILLIAMS, LAWRENCE, WELSH & GREEN and F. O. McFARLAND, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

In January, 1909, Mrs. Mary Jane Sargent was adjudged feeble-minded by the County Court of Knox county on the petition of Linnetta C. Sargent, a daughter-in-law, and John S. Mathews was appointed her conservator. Her property consisted of a dower and

homestead interest in a farm of 200 acres that had never been assigned; one-fourth interest in 120 acres of land, 40 acres of which was brush pasture; a dower in 120 acres; $500 in cash and a note for $500 secured by a mortgage. In March, 1911, she filed a petition in the same court praying to be restored to her rights. The notice required by the statute was served on the conservator. Thereupon he employed a firm of attorneys, and the daughter-in-law employed another firm to resist the application of Mrs. Sargent to be restored. Neither the conservator, the daughter-in-law, nor the attorneys of either of them ever interviewed Mrs. Sargent before the hearing. The conservator and his attorneys consulted a doctor who had not seen her for more than a year, and a nurse who had had charge of her but had not seen her for months, and spent some time searching for and interviewing other witnesses. The attorneys employed by the daughter-in-law took active steps in looking up evidence. When the petition was set for hearing, the conservator filed an affidavit for a continuance on the ground that a witness was unable to be present, and the hearing was continued. The conservator and the daughter-in-law brought witnesses from Galva, Illinois; Davenport, Iowa, and Omaha, Nebraska, to prove that Mrs. Sargent should not be restored. On the hearing Mrs. Sargent and two or three of her friends were sworn and examined. The conservator called and examined the doctor and nurse, and a number of other witnesses, and the case was submitted without argument. The jury found in her favor and the court entered an order restoring her to her rights.

The conservator presented his report to the court, asking credit, among other things, for money paid his attorneys to apply on expenses of the trial, $36.60, and for money paid his attorneys to apply on their fees and expenses, $134.54, and for an allowance for his services as conservator from January 2, 1910, to May 29, 1911, $100. The report showed that he received $790.42 and paid out the entire amount, hav-

ing nothing left except the $500 mortgage. The County Court approved the report and allowed all the claims, and from that order Mrs. Sargent appealed to the Circuit Court of said county. On a trial there without a jury the court affirmed the order relative to the compensation of the conservator and disallowed the claims for expenses and attorneys' fees, and from that order the conservator appealed to this court.

Section 17, Chapter 86, Hurd's R. S., directs that "the conservator shall manage the estate of his ward frugally and without waste." Section 13 of the same chapter directs that "he shall appear for and represent his ward in all suits and proceedings unless another person is appointed for that purpose." But the statute nowhere provides that he shall appear against his ward and use the ward's estate to prevent a restoration. He was her trustee and not her adversary. On receipt of notice that his ward desired to be restored, the conservator should have consulted or interviewed his ward, and if satisfied that she had recovered, place no obstacles in the way of her restoration. If, on the other hand, he entertained doubts of her ability to care for herself and manage her estate, he should have laid the matter before the county judge and been governed by his directions, and for any reasonable expense so incurred he would have been entitled to be reimbursed. Moreover, he knew that the daughter-in-law had employed a competent firm of attorneys who were doing all that was needed to prevent his ward's restoration, and was charged with the knowledge that there was no necessity of spending his ward's money for that purpose. There was no reason whatever why he should take any steps against her restoration when he learned that her relatives, the persons supposedly most interested in her welfare, had employed competent attorneys to do the same thing.

Our attention is not called to any Illinois authority that supports the conservator's contention that the

ward's estate should pay the costs of an unsuccessful attempt to prevent a restoration. Some cases from other states are cited, but in so far as we have been able to examine them, they are based upon statutes or orders of court of the respective states in which those decisions are found and therefore not applicable here, as there is no such statute in this state and there was no order of court authorizing the conservator to expend any of his ward's money for that purpose. We can see no justifiable motive in the conduct of the conservator towards his ward's estate, and he having incurred unnecessary expense without the authority of the County Court and in violation of the statute, can not recover from the estate which he was appointed to conserve.

To establish the rule contended for by appellant would place the estate of a person under disability virtually at the mercy of the conservator, however unscrupulous he might be. There are no grounds, legal or equitable, upon which the charges made by the conservator in his account against the estate of appellee in resisting her application for restoration should be allowed, and the order of the Circuit Court is affirmed.

*Affirmed.*